Good morning, Your Honors, and may it please the Court, I am John Saba, appellant in this case. In 2011, this Court affirmed the Bankruptcy Court ruling that our predecessor, the appellant's predecessor in interest, was a partner with Flamingo 55 in the acquisition and development of the Las Vegas land. So appellants filed a contribution claim and it was denied by the Court. The trustee's objection was sustained by the Court on two grounds. One is that appellants were not entitled to file a contribution claim under 11 U.S.C. section 502 E1C because appellants had filed a subrogation claim earlier. Counsel, can I interrupt you to ask the main question that's bothering me about your position? Yes, sir. It's that I understand your problem with, you know, our Court shut down one avenue and so you wanted to start over and pursue another. But why weren't you able to pursue both simultaneously? As we did, Your Honor. Our first proof of claim included a claim for subrogation and contribution. But you never – as I understand it, you only litigated the subrogation. All right. So why weren't you compelled to let the Bankruptcy Court know, look, our first position because it would result in a secured claim is that we want subrogation. But if you're going to deny us that in the alternative, we'd like a contribution claim. That's a good question, Your Honor. Appellants were – we were very comfortable with the fact that we were qualified for subrogation for many reasons, and I have thought about it and listed them. As I mentioned, we were careful and listed both theories. But also, there was no partnership agreement. There was – excuse me, no. I'm sorry, Your Honor. There was no what? There was no partnership agreement. Right. That's one of them. An accommodation agreement between Flamingo 55 and Broadway Acacia was filed as an exhibit in the case. I am almost certain that it happened. In our case, an appellant's case in Santa Ana Superior Court, the other side submitted three declarations that there was no partnership, and they submitted an accommodation agreement between Flamingo 55 and Broadway Acacia that this was an accommodation by Broadway Acacia. And I would like to mention that we did not have anything to do with the operations of Broadway Acacia. We were absolutely – we had no authority or anything like that. Can I just take you back to the question I was focused on? Yes. Let me just tell you again why I have a problem with your case. It seems to me if – let's say this was an ordinary civil case, and you had both a potential contract claim and a potential tort claim. You don't normally get to litigate the contract theory, lose, and then start all over again and say, oh, okay, well, if we don't have a contract claim, then we're going to pursue this as a tort claim. You have to pursue both simultaneously, maybe in the alternative. And it seems to me that's kind of the same situation you were in. The Court did not rule on it. Even though we submitted it to the Court, to the back-up support, it did not rule on it. But you didn't argue it. That's Judge Watford's question. You perhaps pled in the alternative initially, but you really pursued the subrogation claim. Until we got the final judgment. And unlike the civil rules that allow you to plead in the alternative, the problem I think you've got on 502 is that it talks about if somebody has asserted, if a party asserts a subrogation claim, you can't pursue contribution. What about that? I don't see that, Your Honor, and I may be mistaken. I don't see that as an election of remedies. We believe in the subrogation. And when it turned out that we really did not have a subrogation right, well, then, okay, if you don't have a subrogation right, you must have a contribution right. You're saying the purpose of that statutory provision is to prevent a double recovery, not to force an election of remedies. That's correct. Thank you so much. That is exactly what our position was. But the difficulty with the position, it seems to me, and I fully appreciate that. That's one possible interpretation. But it still comes back to 502, which says that if one has asserted the subrogation claim, then you can't. The language says in 502 that if a party has asserted a subrogation claim, then contributions are not available. It seems to me that that's set up, in keeping with Judge Watford's question, which is that you can plead in that. You have to have pursued this claim. That's the difficulty I'm having. But we don't have a subrogation right, Your Honor. So 502 cannot apply to us because only a surety, somebody who is secondarily liable on a claim, has a right to make a choice. In the subrogation case, when it came to the Ninth Circuit, our court was very careful to talk about the very unique facts here, right? The very unique? The very unique facts and your relationship to the original debtor on this note, right? BA actually signed the original note. I'm sorry. Who signed the original note? Broadway Acacia. Yes. It was Broadway Acacia that signed. You're talking about the loan between... Yes. Yes. Yes. It was Broadway Acacia and Flamingo 55 that signed it. Correct. Yes. And so it's not the typical case where we would see, the typical scenario where we would expect Broadway Acacia to be claiming subrogation, is it? Well, the court, okay, we made, we filed an adversary complaint to the court to determine what our position is because, as you can see, we did not know what is going on here. And we asked the court to determine what are we. And the court said, you have no interest in this property. That's it, okay? This property belongs to the estate and you have no interest. And we took that to mean that since there is a first deed of trust on the property for Datacomp, and we paid that loan, then we stepped into the shoes of Datacomp. Yes. I mean, the court said, get out of here. You have nothing here. You have nothing to do with the land. You have no interest in it. It's ours and you have no interest in it. So what is left for us, we paid the million dollars for the Datacomp loan, which secured the land. I mean, it was the purchase money loan. And basically the court is, and the court did not discuss the Datacomp loan, would not discuss it. So basically we're assuming that based on all this, no partnership agreement and so on and so forth, and the court came up with this partnership assumed by fact that was afterwards, we assume that we stand in the shoes of Datacomp. And the Datacomp loan was not contested at all. At any stage of this litigation, and this is a question I'm going to put to you. I'm sorry. At any stage of this litigation, was there any evidence introduced as to the legislative history of the interplay of 502E and 509A? Thank you so much, Your Honor. As a matter of fact, I have it right here, yes. And it does, the notes to 502E basically says that 509 and 502 relate only to those creditors who have a choice between subrogation and accommodation. And, again, it doesn't apply to what the court had found, that we are partners. But it is part of the notes that it applies only to real creditors, real co-debtors, I should say. Counsel, would you like to reserve some of your time? I'm sorry? You're down to a minute. Would you like to reserve some time? Yes. All right. Thank you. You bet. May it please the Court. Dwayne Gilman appearing on behalf of Timothy S. Corey, the trustee in the case, and the appellee. For two reasons, this Court should sustain the district court's sustaining of the order disallowing the claim. The first is the statutory requirements of 502E1C have been met. And the second is that the claim is late filed and should be and was properly disallowed as a late filed claim. Let me address what I believe was Judd Watsford's question. How did we end up here procedurally? Mr. Grantham and Mr. Saba made a choice. When they amended Claim 9, and the place in the record where this is best laid out is in the claim registry, ER 295 through 299. When they amended Claim 9, which had essentially asserted the contribution claim that we're now addressing, they eliminated that claim and they went with their subrogation. They made a choice. They made a tactical choice to what they thought would put them in a better position to assert a secured claim. They stepped into the shoes of the secured creditor. We're going to be secured. We're going to get interest. But when you say they eliminated that claim, do you mean anything other than they simply did not pursue it? No. I mean something — when they amended the claim to be Claim 10, they did not assert the contribution claim. It's a separate piece of paper in which they assert the subrogation claim and amend their claim, consciously amending their complaint in the civil proceeding to eliminate the old claim. By eliminate, what you mean is they've now removed it from their current pleadings as of that amendment? Correct. As of the date of the amendment, they removed the contribution claim. And that conscious action on their part led to the only thing that we were objecting to, both the creditor and the trustee, was the subrogation claim. And that's why Judge Markell, in his ruling, only addressed the subrogation claim, why the appeal to the district court was only of the subrogation claim, and this Court reviewed the subrogation determination. It also, interestingly enough, triggers the facts that give rise to the late filedness, in that after the claims bar date, their previously eliminated Claim 9 reappears or is reasserted after the claims bar date. And hence, they make the argument for the first time on appeal, oh, we relate back to Claim 9. Now, they didn't make that argument in front of Judge Markell. And I think this Court, on the late claim provision, should go with the standards of O'Gannon v. Lovelock, this Court's decision, in that when you raise it the first time on appeal, it shouldn't even be treated. And hence, the late filedness. And last, they can meet the standards of 3002c3, a recovery claim, and it's not a recovery claim. It's not a preference where a judgment is entered recovering the payment and then give rise to the claim. It's clearly late filed. As to the statutory language, I'm attempting to save half the time for my calling. It's just clear. 502e21 says the Court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor. This is one note, okay? The Datacom note is signed by both of these, their predecessor in interest and the debtor, with the debtor, to the extent that such entity asserts a right of subrogation to the rights of such creditor or 509. Roberts. Can I ask you? So what do you take? I know that there is a school of thought mostly on the Supreme Court of the United States that we don't go beyond the plain language. But what do you take to be the purpose of the statute you just read? To force an election of remedies. Why would you force the election? Why isn't it to, as at least one bankruptcy case has said, to prevent double recovery? Well, I think it is to prevent double recovery. But it's also to prevent litigation that goes on for 11 years in the case. Well, that's because of the untimeliness problem. But in the normal course, why wouldn't it make sense that you could pursue both simultaneously, but you would just not recover double recovery? Well, I don't know why Congress chose this route, to tell you the truth. It certainly encourages what we don't have in this case, which is expeditious claims adjudication. The reason you have the language of 502 is say, creditor, make an election. You choose which way you're going to go, because we want to get the claims process over, and we want to get these creditors paid as soon as possible. We don't want to have these cases. We don't want to have these cases drag out for 11 years and have trustees and their counsel continue to work for until they're gray, nothing against gray-haired people in the room. It's ‑‑ Before you sit down, I just want to make sure. So you don't think they could have pleaded subrogation and contribution in the alternative? You think the statute forbids that, right? I think the statute precludes that. It doesn't just preclude, as you put it, Your Honor, double recovery. I think your opposing counsel is trying to tell you something. I mean, co‑counsel. Sorry. Forgive me. May it please the Court, Mark Stern for creditor Emeraldgate. And I originally had planned on addressing the issues in the reply brief that were raised anew that we didn't have a chance to do, but I'd like to address the Court's question about the subrogation claim and the contribution claim. Pretty unusual, isn't it? Well, in this type ‑‑ I mean, everywhere else we allow people to plead in the alternative, and yet I look at this language in 502 that says, when one asserts a subrogation claim. In a vacuum, I would agree with you. But in this particular case, what we have is we have parties. We don't know if they're creditors. We don't know if they're equity holders. They're acting in concert with people that own the debtor. That originally brought a $5 million secured claim that was disallowed by the Court, brought a series of adversary proceedings to attempt to wrest control of the property after they lost it, which was denied by the Court. They then brought the subrogation claim, I believe, because it gave them a better position in the bankruptcy. It gave them a secured claim versus an unsecured claim. And ‑‑ But it sounds like what you're telling ‑‑ we're familiar with that history. And it is, as I said earlier, a unique circumstance that these folks find themselves in. And in the subrogation case, it seems to me that our Court was very mindful of issuing a very skinny opinion that talked about that. But it was very, very clear that they were joint obligors on the debt, that they were pushing a square peg into a round hole, as far as they could put it. Right. So I agree with all of that. So how does that help us here when we talk about this contribution claim? Because when they do that, they forego, they've elected. They've said, look, we're going to do this, we're not going to do that. It sounds like you're relying ‑‑ And there comes a point in time in which you have to decide a direction and go. Mr. Saba takes a position. He pled the contribution claim, but he never followed up on it. He never briefed it. He never forced the Court to a decision. So are you relying on the facts of this case, or are you relying on the plain language of 502? I think both. I think both. The plain language of this statute is very clear, and it's exacerbated by the facts of this case, that this is a third set of claims and a series of adversary proceedings that continue to wrest control of the assets of this case. What's your strongest argument that we should read this as once you assert subrogation, then you're out for contribution? What's your strongest authority? The strongest argument is that subrogation never applied. These are attorneys that are arguing ‑‑ They're the facts. Yes. These are attorneys that are arguing to get an advantage where none exists in the bankruptcy code. And that was the purpose of it. Just ‑‑ I'm out of time.  Do you have a question? I guess not. Sorry. No need to apologize. Counsel? Thank you, Your Honors. I just would like to make the point that 509 and 502 were written to prevent double recovery. You can see that in the cases. You can see that in the notes, the legislative notes. And even you can see it in the language. So in that regard, it is not sort of like, say, if you go this way, you cannot go that way. It's just to prevent people from ‑‑ Your adversary says on the timeliness issue that you did not raise the relate back argument until you got to this court. Is that right? I don't really understand what this relate back argument is. That because you did not really pursue in any meaningful way your contribution claim until after the bar date, but you said it's still timely because you had pled it way back when in the ‑‑ and he says you really abandoned that pleading when you amended your pleadings. Your Honor, I just found a case that is on point. And I just would like to give the court the title of it. It is basically exactly on point. It is called Henry Leon Albert Little, 74BR625, 1987, Bankruptcy. 74BR625? 625. Yes. 74BR625. It is on point with our position. And, of course, there are two other arguments that the court took away from us the subrogation right and left us with a contribution right against the debtor now, against Flamingo 55. So that is a second argument why 3002C does not apply to us. And the first one is, you know, there was no notice of deadline to file proofs of claim filed in the case. This was a no-asset case, and the trustee did not even file a notice of potential dividend, so the clerk of the court did not even send out notices to deadline for the filing of the proofs of claims. There are many other things here that—and, of course, we made a claim for subrogation and contribution. Thank you, Your Honors. Thank you.
judges: Rakoff, Christen, Watford